JOSEPH F. HUGHES & CO., Inc., a Maryland corporation

v.

HARRY S. MICKEY, INC., a Maryland corporation, Durling Electric Co. of Baltimore City, a Maryland corporation, Associated Products and Service Company, Inc., a New Jersey corporation,

and

The Tolerton Company, an Ohio corporation.

Civ. No. 13873.

United States District Court
D. Maryland.

Nov. 16, 1962.

Cornelius P. Mundy, Baltimore, Md., for plaintiff.

Donald L. Merriman, Baltimore, Md., for Harry S. Mickey, Inc.

Delverne A. Dressel, Baltimore, Md., for Durling Electric Co.

Richard W. Case, Joseph M. Roulhac, and Smith, Somerville & Case, Baltimore, Md., for Tolerton Co.

Mitchell Stevan, Baltimore, Md., for Associated Products and Service Co.

NORTHROP, District Judge.

Before us for consideration is the motion of the defendant Tolerton Company (Tolerton) to dismiss an action of interpleader filed June 11, 1962, by Joseph F. Hughes & Co., Inc. (Hughes) under 28

U.S.C. § 1335. Other defendants in the action are Harry S. Mickey, Inc. (Mickey), Durling Electric Co. of Baltimore City (Durling), and Associated Products and Service Company, Inc. (Associated).

The plaintiff paid $5,000 into this court under the following circumstances: The plaintiff on or about October 1, 1959, contracted with the Baltimore County Board of Education to build a high school. A payment bond, apparently in the amount of $2,780,375.00 was furnished as required by Maryland Code of 1957, Supp. Art. 90, § 11, naming Hughes as principal and Standard Accident Insurance Co. as surety. Hughes admits its indebtedness of $5,000 to Mickey for a quantity of tables or desks supplied in accordance with the specifications of the prime contract. Mickey subcontracted its commitment to Durling for $3,287.81, of which $3,057.81 remains owing to Durling. Durling in turn subcontracted to Associated, to whom Durling is said to owe $4,-755.00, and Associated subcontracted to Tolerton for $3,287.81. Associated has been re-organized under the Federal Bankruptcy Act in a proceeding in the United States District Court for the District of New Jersey, and Tolerton received $986.24, or 30% of its claim. Tolerton is presently suing Hughes for the balance of $2,301.57 in the Baltimore County Circuit Court. The action of interpleader does not include the surety. Hughes asks that the defendants be restrained from instituting or prosecuting any actions such as the one by Tolerton just mentioned.

Hughes contends that the suit in the county court will not determine Hughes's liability to any party except Tolerton, and that Hughes and its surety may have to pay twice for the same tables. Hughes cites Section (1) of Rule 22 of the Federal Rules of Civil Procedure to support its objection to possible double-liability.

Tolerton's motion to dismiss urges that Hughes is independently liable to Mickey under its contract, and that the plaintiff failed to join the surety in the action. More emphatic now, however, is Tolerton's insistence that this court lacks jurisdiction under 28 U.S.C. § 1335 because the claimants are not adverse.[1] This latter argument is based on the contention that the fund here involved is not $5,000, as claimed by Hughes, but rather the penal amount of the bond, or $2,780,-375. Admitting Hughes' assertion that the re-organization of Associated cut off any rights against the $5,000, Tolerton stresses that it has no claim against the $5,000. Tolerton also points to the public-policy considerations against permitting interpleader by a prime contractor and its surety wherever a subcontractor defaults in paying his supplier.

The reactions of the other defendants range from that of Mickey, which opposes the interpleader, to Durling, which admits its adversity to the other defendants. Associated simply claims $4,755 of the $5,000 for itself and denies any liability to Tolerton; Associated also denies that Tolerton has any claim on the bond. This court believes that Tolerton's motion is such that the action of interpleader as to all parties must stand or fall as the motion is decided.

The court is impressed with Tolerton's contention that the defendants in this interpleader lack the adverseness

1. Section 1335(a) reads in part:
"The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property * * * if
"(1) Two or more *adverse* claimants, of diverse citizenship * * * are claiming or may claim to be entitled to such money or property * * *." [Emphasis supplied]
While Rule 22 of the Federal Rules of Civil Procedure does not specify that claimants must be adverse, the plaintiff in the present case is obliged to comply with § 1335 because the jurisdictional minimum of $500 set there permits the plaintiff to attempt interpleader, while maintaining that only $5,000 is involved. See 3 Moore's Federal Practice, ¶ 22.02, p. 3004, and ¶ 22.04[2], p. 3009.

specifically required by 28 U.S.C. § 1335. Tolerton, as mentioned supra, argues that adverseness is there made a jurisdictional requirement. Without disputing that assertion, this court is of the opinion that adverseness among defendants is essential to the concept of interpleader itself. The only question here is whether such adverseness is lacking. The movant rightly sees the relevance to this question of the fund involved. Both Hughes and Tolerton have cited United States for use and benefit of Eaton et al. v. Olson, 5 F.R.D. 513 (N.D.Cal.1946) which involves, in a suit under the Miller Act, a counterclaim in the form of interpleader filed by prime contractors and their sureties against claimants who had supplied labor and materials to a subcontractor. It was there stated:

> " * * * [I]t is apparent that they * * * will not be exposed to double or multiple liability upon the same obligation, Rule 22 gives them no such right of interpleader. The amount of the payment bond fixes the extent of their liability to persons having claims for labor and materials supplied the subcontractor, and that amount is admittedly well in excess of what is required to satisfy such claims in full. The claims are not therefore, adverse to each other; the claimants are not seeking to recover the same thing or amount. * * * It is likewise of no significance that the counterclaimants will be subjected to several suits arising out of the same transaction. Rule 22 does not purport to give a defendant severally liable to different claimants the right to interplead all such claimants in an action by less than all— solely because the several liabilities have a common origin—where the interests of such claimants do not, by adverseness to each other, expose

him to the danger of double or multiple liability for the same thing or amount." [2]

The present case admittedly differs from Olson in that here we have a *chain* of subcontractors or materialmen. But the language quoted indicates strongly that that decision was based on the amount of the bonds exceeding the amounts claimed. If that was the basis, the differences in the factual situations are not significant.

■ Liability of the prime contractor, whether under the Miller Act or under state equivalents such as the Maryland statute involved here, is created by the statute. Fleisher Engineering & Constr. Co. v. United States, 311 U.S. 15, 17, 61 S.Ct. 81, 85 L.Ed. 12. The bond required is for the purpose of protecting subcontractors and materialmen on public projects where they have no lien on the work done. Clifford F. MacEvoy Co. v. United States, 322 U.S. 102, 104, 105, 64 S.Ct. 890, 88 L.Ed. 1163. The statute fixes both the fact and the amount of this liability without regard to the precise terms in which a particular bond is worded. For this reason Hughes' attempt to show that the Maryland Court of Appeals, in Women's Hospital for use of Robert S. Green v. Fid. & Guar. Co., 177 Md. 615, 11 A.2d 457, 128 A.L.R. 931 (where the wording of the bond apparently closely paralleled that in the present case) would not hold the principal liable for the debt of a subcontractor to a materialman is not pertinent. Moreover, it is not important whether or not a Maryland court would be guided by Judge Thomsen's opinion in United States v. Blount, Brothers Construction Co., D.C., 168 F.Supp. 407 (which involved the somewhat different Miller Act) by holding that Article 90, § 11 would not extend its protection as far down as Tolerton. These questions have nothing to do with the essential nature of the fund involved here or with

---

2. 2 Barron and Holtzoff, Federal Practice and Procedure, § 551, p. 230, says in reference to 28 U.S.C. § 1335 and Rule 22:

"The rule permits interpleader whenever there are multiple claimants whose claims are such that the plaintiff is or may be exposed to double or multiple liability. The statute requires that there be two or more adverse claimants who are claiming or may claim the same money or property. Under both the statute and the rule, the purpose is to protect against double vexation in respect to a single liability, rather than to a double liability as such * * *."

the appropriateness of interpleader of these claimants.

The interpleader is intended to prevent multiple payments to multiple claimants, each of which payments is in the full amount of what actually is but a single liability. Here, however, the statute in question acknowledges the possibility of not merely a single liability, but a multiple liability; its purpose is to guarantee payments by a subcontractor to his materialmen, regardless of whether or not the subcontractor himself has been paid. Thus, the claim of the subcontractor usually is not adverse to that of the materialmen, and vice versa. Where, as here, there is a contractual chain linking successive potential claimants, there are ways in which a prime contractor can guard against multiple payments. The interpleader is not one of them, at least where the amount of the fund exceeds the total amount claimed.

For the foregoing reasons, the motion to dismiss the action of interpleader shall be granted without prejudice and shall apply to all defendants. The court will sign an order in accordance with this opinion, and counsel for the defendant Tolerton is instructed to prepare and submit same.